JETTON, REVENUE AGENT OF THE STATE OF TEN-
NESSEE, v. UNIVERSITY OF THE SOUTH.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE MIDDLE DISTRICT OF TENNESSEE.

No. 488. Argued January 28, 1908.—Decided February 24, 1908.

Although all the parties to this action are citizens of the same State the
Circuit Court of the United States had jurisdiction because the case
arises under the Constitution of the United States, as complainant insists,
that the tax sought to be restrained is imposed under a state statute
that impairs the obligation of a legislative contract for exemption from
taxation.

A charter exemption from taxation of land and buildings to be erected
thereon so long as they belong to the educational institution exempted
does not exempt from taxation the separate interests of parties to whom
the institution leases portions of the property, and who erect buildings
thereon; and a subsequent act of the legislature taxing such separate
leasehold interest does not amount to taxing the property owned by the
institution, and is not unconstitutional under the contract clause of the
Constitution of the United States as impairing the obligation of the
exemption provision in the charter. So held as to the act of Tennessee
of 1903.

This court while not bound by the construction placed on a state statute
by the state court, as to whether a contract was created thereby, and
if so how it should be construed, gives to such construction respectful
consideration, and unless plainly erroneous generally follows it; a decision
of the state court, however, that a leasehold interest in exempted prop-
erty cannot, during the exemption, be taxed against the owner of the fee,
is not authority to be followed by this court, on the proposition that the
leasehold interest cannot be taxed without impairing the obligation of
the contract of exemption against the lessee in his own name and against
his particular interest in the land.

A charter exemption from taxation cannot be extended simply because it
would, as so construed, add value to the exemption; and an exemption
from taxation of property belonging to an institution, so long as it be-
longs thereto, will not be extended to also exempt the leasehold interest
of parties to whom the owner leases the same.

This court will not construe a state statute assessing leaseholds and mak-
ing the tax a lien upon the fee as creating a lien on property exempted
from taxation, and thereby violating the contract clause of the Constitu-

tion when the state court has not so construed the statute and the taxing officers of the State disclaim any intention of so construing it or levying any tax on exempted property.

An exemption of real property from taxation will not be construed as extending to the interest of the lessee therein, because a forced sale of the lessee's interest might put the property in the hands of parties to whom the exempted owner objects. Under the terms of the lease the owner can prevent such contingency by reëntering for non-payment of taxes.

The fact that the lessee does not own the buildings erected by him on leased property does not affect the right to tax his leasehold interest; it is material only on the question of value of his interest.

155 Fed. Rep. 182, reversed.

THIS is a suit in equity, brought in the United States Circuit Court for the Middle District of Tennessee, by the University of the South, a corporation, and by the several individual complainants named in the bill, who are residents of the county of Franklin, in that State, and lessees of certain lands from the university, to obtain an injunction against the individual defendants, who are a state revenue agent, and a trustee of Franklin County, and also against the county of Franklin, in the above-named State, to restrain them from taking any proceedings to collect taxes from the lessees of the university within the limits of the thousand acres mentioned in the complainants' bill.

The bill having been filed, a preliminary injunction was issued, restraining the collection of the taxes, as prayed for.

Thereafter a demurrer to the bill was filed by the defendants on several grounds, among others on the ground that, as to the individual complainants, the bill could not be maintained and the court had no jurisdiction to hear and determine the cause on their behalf.

The defendants also answered.

The demurrer was sustained as to the individual complainants and the bill dismissed, but was overruled as to the university itself.

After a trial between the university and the defendants a final decree was entered in favor of the university, restraining the defendants from assessing, or attempting to assess, taxes

on the property and leasehold interests described in the bill, and situated within the thousand acres already referred to.

From this final decree the defendants have taken an appeal directly to this court, under the fifth section of the judiciary act of August 13, 1891, c. 517, 26 Stat. 826, as involving the application of the Constitution of the United States.

The material facts are as follows:

The University of the South is a Tennessee corporation, under a charter granted by the legislature of that State, January 6, 1858, and amended January 19, 1858. The corporation was created for the purpose of establishing a seminary of learning, to be located at Sewanee, on the Cumberland Mountain, in Tennessee.

The tenth section of the act, under which the question arises, is set forth in the margin.[1] That question is whether the assessments made against the lessees upon their interests in that portion of the one thousand acres of the lands leased to them respectively are valid or whether they are not a violation of the exemption from taxation granted by that section.

The Civil War coming on soon after the charter was granted very little work was done under it; but after peace was restored the university authorities, aided by subscriptions from those interested in the work, went on with it, and in process of time the thousand acres were duly surveyed and marked out and many buildings were erected for the university. Leases were also granted by it of lots within the thousand-acre limit to persons who, under such leases, built upon the lots severally leased to them. By this method a population of about 1,000 or 1,200 people had been gathered within the village called,

---

[1] Sec. 10. *Be it further enacted,* That said university may hold and possess as much land as may be necessary for the buildings and to such extent as may be sufficient to protect said institution and the students thereof from the intrusion of evil-minded persons who may settle near said institution, said land, however, not to exceed ten thousand acres, one thousand of which, including buildings and other effects and property of said corporation, shall be exempt from taxation as long as said lands belong to said university.

Sewanee, situated within the limit stated, and which was a barren wilderness when the charter was granted. In fact, the very existence of the village is the result of the efforts of the university.

In the summer of 1906 proceedings were taken to assess taxes upon the interests of the lessees occupying various lots under the leases mentioned, and a hearing was had before the trustee of Franklin County, within which the lots were situated, and he held that under the act of the legislature of Tennessee, passed January 10, 1903, c. 258, being the general assessment act, the lessee of a leasehold interest of a lot in Sewanee was taxable on the value of such interest, and he thereafter assessed the tax in the case of an individual named, and announced his intention of doing the same with reference to all lessees similarly situated. This bill was then filed before any further assessments were made.

The several leases under which the various lessees of the university held their lots, among other things, provided that the lessees would pay the rent specified in the lease "and all taxes and assessments upon said premises." It was also provided in the leases that the premises should not be sublet or transferred without the consent of the commissioner of lands and buildings of the university, and that for any violation of the restrictions and provisions made in the lease the lessor might end and determine the lease and reënter upon the premises. Each lease also contained the following, the blanks being filled up in accordance with the terms which might be agreed upon between the parties:

"And at the expiration of the present term, the University of the South shall have the option of taking the premises by paying for all such improvements made thereon, or may renew the lease for another term of ———— years, on such terms as may be agreed upon by the parties respectively, and may also give a second renewal for ———— years; and in case the parties cannot agree upon the value of the improvements or the rental to be paid for the new term, the same shall be determined

by arbitration, one of the arbitrators to be selected by the commissioner of buildings and lands and the other by the lessee; and in case they cannot agree, they shall call in an umpire  . . . provided, however, that in fixing the rental for the new term, the value of the improvements shall not be taken into account as against the said party of the second part  . . .  heirs or assigns.  And it is further agreed that the improvements to the value of ———— hundred dollars be made and kept on said premises by the party of the second part."

At the time of the passage of the act of 1858 (the charter of the university) there was no statute providing for the separate taxation of the interest of a lessee in real estate, but the whole value of the entire real estate was assessed against the owner of the fee.  The act of 1903, already mentioned, provided in subdivision 5, of § 5 that the interest of a lessee should be assessed to the owner of such interest separately from other interests in the real estate.

Section 32 of the same act provided that all taxes should be a lien upon the fee in the property, and not merely upon the interest of the person to whom the property was, or ought to be, assessed, and it was provided that the whole proceeding for the collection of taxes, from the delinquency to the sale, should be a proceeding *in rem.*

It is also asserted by complainant as a further ground of invalidity that § 2, subd. 2, of the act of 1903, providing a general exemption from taxation of religious, educational and other named classes of institutions, as therein stated, does not provide as broad an exemption as the special exemption granted the university by its charter, and if it be held that the above general exemption does not reach the complainant, while at the same time it is claimed to repeal the special exemption provided by the charter it impairs the contract between the State and the university, and is therefore void.

*Mr. Charles T. Cates, Junior,* Attorney General of the State of Tennessee, and *Mr. Felix D. Lynch,* with whom *Mr. Frank L.*

*Lynch, Mr. I. G. Phillips* and *Mr. Thomas B. Lytle* were on the brief, for appellants:

No Federal question was made by the bill. All of the parties, complainant and defendant, are citizens of the same State and no jurisdiction could be conferred upon the Circuit Court by the averments of the bill as to the alleged impairment of the obligation of a contract between the State of Tennessee and the University of the South. The continuing binding force of the contract between the State and the university has been solemnly admitted by the appellants, representing the State and the County of Franklin, and adjudged by the Supreme Court of the State of Tennessee. *University of the South* v. *Skidmore*, 87 Tennessee, 155 *et seq.*

When, notwithstanding these facts, appellee contends that its charter is impaired by the provisions of the Tennessee assessment act of 1903, c. 258, the reply is that the act in question, when properly construed, does not in any way affect appellee's property or place any lien or cloud thereon. The provision contained in § 32 of the act, that all taxes on real estate shall be a lien upon the fee in said property, must be construed to mean that such taxes shall be a lien upon the fee in property that is not exempt. This construction harmonizes and gives effect to all parts of said act, and sustains the same as a valid enactment in accordance with intention of the legislature. Lewis' Sutherland Stat. Const., §§ 381, 382. See also *Gold* v. *Fite,* 2 Baxt. (Tenn.) 248, 249; *Standard Oil Co.* v. *State*, 117 Tennessee, 618, 640, 641.

In ascertaining the intention of the legislature, it will not be presumed that the lawmakers intended to pass an act in conflict with the organic law. *Maxey* v. *Powers*, 117 Tennessee, 403; *Wise & Co.* v. *Morgan,* 101 Tennessee, 282; *Rose* v. *Wortham,* 95 Tennessee, 508.

The decision of the Supreme Court of Tennessee that appellee's property is exempt from taxation has the force of a law of the State, and will be treated as a part of the statute affecting said property.

It is not sufficient to give this court jurisdiction upon the grounds claimed, that by possibility there may be some cloud cast upon appellee's title by some possible action of the officers of the State, because the presumption in all cases is that the courts of the State and the officers thereof will do what the Constitution and laws of the United States require. *Shreveport* v. *Cole,* 120 U. S. 36; *Neal* v. *Delaware,* 103 U. S. 370.

The property rights of the several lessees of appellee in and to their respective leasehold estates and the improvements erected thereon under their several leases are lawfully subject to taxation by the State and county.

The legislature may provide that real estate shall be assessed as personalty or that personalty shall be taxed as realty. Cooley on Taxation (3d ed.), p. 641. And see § 63, Code of Tennessee (Shannon), the effect of which was to change the common law rule that a leasehold estate is personal property. *Alley & Bush* v. *Lanier,* 1 Cold. 540; *Burr* v. *Graves,* 4 Lea, 556.

The words "owner of land," as used in the statutes of Tennessee, do not necessarily mean the person owning the entire estate in such property, but may mean any person having an interest therein, whether in fee or for a term of years. *Alley & Bush* v. *Lanier,* 1 Cold. 540. See also Cooley on Taxation (3d ed.), pp. 633, 634, and cases there cited.

Under the provisions of the clauses herein in question, the improvements made by the lessees unquestionably belong to them and the plain implication of the leases is that, unless paid for by the university at the end of the term, the lessees might lawfully remove them. Under such circumstances a lessee making improvements on leased land is liable for taxes on such improvements. See *Russell* v. *City of New Haven,* 51 Connecticut, 259; *Philadelphia &c. R. R.* v. *Appeal Tax Court,* 50 Maryland, 397; *Zumstein* v. *Coal Co.,* 50 Ohio, 264; *Bentley* v. *Barton,* 4 Ohio St. 410; *Parker* v. *Redfield,* 10 Connecticut, 490; *People* v. *Bd. of Assessors,* 93 N. Y. 308, 311; *Ex parte Gaines,* 96 Arkansas, 227; *San Francisco* v. *McGinn,* 67 California, 110;

*State* v. *Campbell*, 23 La. Ann. 445; *People* v. *Shearer*, 30 California, 645, 656, 657; *State* v. *Moore*, 12 California, 56, 69, 70; *State* v. *Tucker*, 38 Nebraska, 56, 59, 60; *Luttrell* v. *Knox County*, 89 Tennessee, 257.

Appellee's charter exemption is personal to it. Immunity from taxation is not transferable; it is a privilege personal to the grantee. *Pickard* v. *E. T. V. & G. Ry. Co.*, 130 U. S. 631; *State* v. *Mercantile Bank*, 160 U. S. 161.

The intent to confer an exemption, and especially when it is insisted that the exemption passes to a transferee of the original grantee, must be clear, beyond a reasonable doubt. *Railroad Tax Cases*, 18 Wall. 226; *Providence Bank* v. *Billings*, 4 Peters, 565.

*Mr. James J. Lynch* and *Mr. Arthur Crownover*, with whom *Mr. William D. Spears*, *Mr. Isaac W. Crabtree*, *Mr. John J. Vertrees*, *Mr. Albert T. McNeal* and *Mr. William L. Myers* were on the brief, for appellee:

The assessment act of 1903 impairs the obligation of the contract of exemption between the State and the university.

At the time this charter was granted, and until the passage of the act of 1903 complained of, the common law rule that taxes on leased property should be assessed to the lessor prevailed in Tennessee. This rule is well established. Taylor on Landlord and Tenant, § 341. See also *East Tenn., Va. & Ga. Ry. Co.* v. *Mayor &c. of Morristown*, 35 S. W. Rep. 771. Thus when this exemption was granted the leasehold interests were assessable as a part of the whole estate to the university, as lessor, and formed a part of the estate exempted from taxation by this charter.

In the case of *University* v. *Skidmore*, 87 Tennessee, 155, it was decided that the *property* is exempt from taxation so long as the title remained in the University of the South. The State cannot now violate this contract and tax this exempt property by simply passing a statute changing the method of assessment. See *State of New Jersey* v. *Wilson*, 7 Cranch, 164, hold-

ing that the exemption attached to the property and passed to the purchaser, as it has been held that the exemption attached to this property so long as the title remains in the university, and that leasing the property does not take the title out of the university so as to destroy the exemption. The exemption is for the benefit of the university, and, as the record shows, materially enhances the value of its property in leasing same. It is this value that the act we are complaining of destroys.

By the terms of the leases the university is required to enter into a new contract, as to the amount of rent to be paid, at the expiration of each term. Necessarily, if the property is assessable for taxes, as against the lessee, it will not be so valuable to him as when free from taxation. As shown, this immunity from taxation entered into and became a part of the original lease contract, and was one of the things taken into consideration in fixing the annual rent thus contracted for. This element of value in the property of the university is thus destroyed by this act of which we complain.

This tax against the lessee is a tax on the right to occupy the land. Hence, in taxing the property when leased, or in taxing the interest leased, a tax is placed upon the only use to which the property can possibly be put, to be made of value to the university. The State insists that, while it may not tax the property directly, it may, nevertheless, tax its use or right of occupancy; while it may not tax the land, it may, nevertheless, tax the rent or income from the land, and thus burden its only value to the university. But see *Pollock* v. *Farmers' Loan & Trust Co.*, 157 U. S. 427; *Dougherty* v. *Thompson*, 71 Texas, 202; *Moseley* v. *State*, 115 Tennessee, 52. Cases of *San Francisco* v. *McGinn*, 67 California, 110; *State* v. *Tucker*, 38 Nebraska, 56; *Luttrell* v. *Knox County*, 89 Tennessee, 257, and others, cited by appellants, discussed and distinguished.

It is not true, as stated by appellants, that the lessees own the buildings, and the arguments based upon this alleged ownership are therefore without force.

The Supreme Court of Tennessee in the *Skidmore case*, treated these improvements as the property of the university, and the decision in that case is based on that theory.

Even if the construction contended for by appellant that the lien should be limited to the lessee's interest in the property, the State would only have a right to sell the lessee's interest for the payment of taxes.

The injury to the university remains the same; if the State is permitted to assess the lessee's interest, and sell same for the payment of taxes, the university's control over this property is lost, and one of the greatest advantages provided for, in § 10 of the charter, is destroyed.

By retaining the title to, and the absolute control over, this one-thousand-acre reservation the university has been able to say who shall come near it. The leases all provide that they may not be assigned without the consent of the university. But, if the State can sell the property for taxes at public auction, the university is helpless to prevent the intrusion of outsiders. Its power to protect its students from contaminating influences will be gone, and one of its most cherished ideals will be destroyed.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The appellant insists that the Circuit Court had no jurisdiction of this suit, because all the parties are citizens of Tennessee. We think, however, that jurisdiction existed, because the case is one arising under the Constitution of the United States, the complainant insisting that under such Constitution the law of the State of Tennessee, passed in 1903, is invalid, because it impairs the obligations of a contract protected by that instrument. *Illinois R. R. Co.* v. *Adams*, 180 U. S. 28, 35. We therefore pass to the merits of the controversy.

As the complainant maintains that the exemption clause in the tenth section of its charter is broader than that contained in the second section of the act of 1903, we may at once refer

to the charter exemption, and if the contention of complainant is not justified by that exemption, it is unnecessary to consider that which is given by the act of 1903. It is by the charter exemption that we are to judge the matter.

Upon the question of the proper construction of the exemption clause in the charter, the case of the *University of the South* v. *Skidmore*, 87 Tennessee (3 Pickle), 155, is cited, and it is urged that within that case no tax can be assessed against the lessees of this property within the 1,000 acres. While in such a case as this we form our own judgment as to the existence and construction of the alleged contract, and are not concluded by the construction which the state court has placed on the statute that forms such contract, yet we give to that construction the most respectful consideration and it will in general be followed, unless it seems to be plainly erroneous.

Looking at the *Skidmore case*, we find that it does not uphold the contention maintained by the complainant. In that case the university filed a bill against Skidmore, trustee of Franklin County, to enjoin him from assessing for taxation against the university the property belonging to it within the 1,000 acres. In answer to the bill the State contended that the thousand acres would be exempt from taxation so long only as they were substantially owned by the university, but that when it gave a lease of the kind described in the case before us it ceased during the term of the lease to be the real and substantial owner of the land so leased, which by the lease was taken out of the exemption granted by the statute, and was from that time taxable against the university. The Supreme Court, however, held that the assessment made was void because the property, the land owned by the university, was exempt from taxation so long as it belonged to that corporation, and the making of the leases did not permit the property to be taxed against the university.

This is a different proposition from the one asserted by the complainant, and is not authority for its contention that the assessment cannot be made against the lessee in his own name

for his particular interest in the land while the university continues to own the fee.

It is plain that the state court has not construed the statute of 1858 as a contract that the interest of the lessee in the land granted to him for a term of years by the university cannot be assessed or taxed against him because of the exemption in question.

Counsel for the appellees, placing the *Skidmore case* aside for the moment, assert that when this exemption was granted leasehold interests were only assessable against the owner of the fee as part of the whole estate, and it was therefore a part of the estate exempted from taxation by the charter. We think this is not a correct construction of the contract of exemption.

As long as different interests may exist in the same land, we think it plain that an exemption granted to the owner of the land in fee does not extend to an exemption from taxation of an interest in the same land, granted by the owner of the fee to another person as a lessee for a term of years. The two interests are totally distinct, and the exemption of one from taxation plainly does not thereby exempt the other. The fact that at the time when the exemption was granted to the owner of the fee the State had not provided for taxation against the lessee in his own name, is not important. The different interests of an owner of the fee and an owner of an estate for years as lessee, existed, and such existence was recognized. An exemption of one did not necessarily include the exemption of the other. The contract of exemption did not imply in the most remote degree that the State would not thereafter, through its legislature, so change its mode of assessment as to reach the interest of a lessee directly, and not through the owner of the fee. In so doing the State does not tax the owner of the land in fee nor the fee itself. It taxes what it had a right to tax—a separate and distinct interest in the land, although the fee thereof be in the university, which cannot be taxed therefor. The doctrine that laws which are in force when a contract is made will generally enter into its obligations (*Osh-*

*kosh &c.* v. *Oshkosh,* 187 U. S. 437) is not denied, but it has no application. The laws existing when the contract was made have not been altered so as to impair the obligations of that contract by the passage of the act of 1903. Those obligations remain precisely as they were prior to its passage. The change wrought by the act affected third persons only (the lessees of real estate) and instead of leaving them to be taxed in the name of their lessor for their interest in the land as such lessees, the act provided for their separate taxation. Such act impaired no obligation of contract between the State and the university.

Nor is such an assessment the same in substance as one against the owner in fee of the land. We cannot see that *Pollock* v. *Farmers' Loan & Trust Co.,* 157 U. S. 429, touches the case. This is not a tax on the rents or income of real estate. The university receives the rents or income free from any tax. The tax is, in both form and substance, upon a separate interest in real estate granted by the lessor, and is assessed against the owner of such separate interest. If the university could lease its lands and could also effectually provide that the interest of the lessee in the land so leased should be exempt from taxation, it may readily be seen that the amount of rent which it would receive would be larger than if no such exemption could be obtained, but that is a matter which is wholly immaterial upon the question of the impairment of the contract of exemption that was really made. That contract cannot be extended simply because it would, as so construed, add value to the exemption. The language used does not include the exemption claimed.

The lessee also agreed in the lease to pay the taxes in any event, and the claim that the agreement was intended only to refer to municipal taxation which might be provided for by the university cannot prevail against the plain words of the agreement.

That part of § 32 of the act of 1903, which makes the tax a lien upon the fee, even if void in that particular, does not make

the section void which provides for the separate assessment of
the interest of the lessee. It is proper to mention that the ap-
pellants did not and do not claim that the thirty-second section
gives a lien upon the fee for the tax against the lessee in cases
where the fee is itself exempt from taxation, but they assert
that the correct construction of that section is to apply the
lien to the fee only in cases where the fee itself may be taxed;
and in their answer they expressly aver that under that sec-
tion neither the State nor county can have a lien upon any
property which is exempt from taxation, and that no claim has
ever been made, or was made in the proceedings instituted
by the state revenue agent that the interest of the university in
the leased premises could be assessed for taxation or could in
any way be affected by the proceedings so instituted, and the
defendants disclaimed any intention of assessing or levying any
tax whatsoever against the property of the complainant uni-
versity, and they denied that the assessment of the interests
of the several lessees of the complainant university in the build-
ings and improvements erected by them upon said property
would in any manner affect the interest of the university. What
is the proper construction of that section on this point is not a
matter of importance as to future assessments, because the
State, having these objections before it, and, as we may pre-
sume, in order to avoid any such objection, even though
possibly not well founded, passed another assessment act in
1907, repealing the one of 1903, and recognizing as valid all
charter exemptions, and also providing that the lien of the
tax should not apply to or affect any fee in property where the
same was exempt from taxation. The question, however,
remains, so far as the assessment here involved is concerned,
and we are of opinion that the construction contended for by
the defendants is the correct one. We cannot assume that the
State would endeavor to create a lien upon property which it
recognized as exempt from taxation, for the purpose of thereby
attempting to obtain such a security for the payment of a tax
due from another upon different property which is not exempt.

This never could have been the intention of the framers of the act of 1903.

Again, it is urged that if the interest of the lessee can be taxed, it might be sold for the non-payment of the tax, and thus some one might get into possession who would not be a proper person to be in such place, and the chief purpose of the charter in this respect would fail. If the interest of the lessee in the land could be sold for non-payment of the tax assessed thereon, such result would arise from the act of the university in creating it. But the lessor might under the terms of the lease at once reënter for non-payment of taxes.

What is the exact interest of the lessee in the land leased to him it is not necessary to here determine. It is plain that he has some interest in it, and that interest is distinct from the fee, and may be taxed when the fee is exempt from taxation. See cases to that effect in the margin.[1] In *Elder* v. *Wood*, decided January 27, 1908, *ante*, p. 226, it was held that a mere possessory right in a mining claim in land to which the United States had title was a right separate from the fee, and might be taxed under a state statute, although the fee could not because it was in the Government. *New Jersey* v. *Wilson*, 7 Cr. 164, is not in point. The exemption was assumed to be absolute, unconditional and unlimited in time. It seems that there was an act (that of 1796) which authorized the lands to be leased, but that act was not brought to the attention of the court. See *Given* v. *Wright*, 117 U. S. 648, 655, where a more full history of the case is given. The act repealing the exemption, passed after the sale of the lands by the Indians, was held void because it impaired the obligations of a contract. In the case before us the exemption lasts only so long as the university owns the lands, and when it conveys a certain interest in them

[1] *People* v. *Brooklyn Assessors*, 93 N. Y. 308; *People* v. *Tax Commissioners*, 80 N. Y. 573; *Parker* v. *Redfield*, 10 Connecticut, 490; *Russell* v. *New Haven*, 51 Connecticut, 259; *Brainard* v. *Colchester*, 31 Connecticut, 407; *Lord* v. *Litchfield*, 36 Connecticut, 116; *Philadelphia R. R.* v. *Appeal Tax Court*, 50 Maryland, 397; *Zumstein* v. *Coal Co.*, 54 Ohio St. 264; *Bentley* v. *Barton*, 41 Ohio St. 410.

to a third person it no longer owns that interest, which at once becomes subject to the right of the State to tax it. When the State exercises that right, as it did under the act of 1903, and taxes the interest in the name of its owner, the State thereby violates no contract, and the tax is valid.

It is said that although the lessee is bound to make improvements, yet he does not own them, even though their value is not to be taken into consideration against him when his lease is renewed. Whether he is the owner of the improvements made by him until the same are paid for at some time, is not material upon the question of the separate interests of the lessee and the owner of the fee, the ownership of the improvements being only material upon the question of the value of the interest of the lessee. Even if the university was entitled to become and was the owner of such improvements at the end of the second renewal, without paying for them, the question still remains as to the value of the separate interest of the lessee, which, even upon that assumption, might be greatly more than the rent to be paid. The value of whatever interest he has is to be assessed as real estate under the statute, and that value must be determined by the assessing officer. All we can say is that it is a separate and distinct interest from that of the owner of the fee and the assessment of that interest for taxation is not an assessment upon the interest of the university, and is not a violation of the exemption granted to it by the statute of 1858.

The decree of the Circuit Court must be reversed and the case remanded to that court with directions to dismiss the bill.

*Reversed.*