IRON COUNTY, Missouri, and Selwyn Light, Assessor of Iron County, Missouri, (Plaintiffs) Respondents,

v.

STATE TAX COMMISSION of Missouri, Hunter Phillips, Carl E. Davis and J. Ralph Hutchison, Commissioners of the State Tax Commission of Missouri, the Ruberoid Company, a corporation, and City of Annapolis, Missouri, a municipal corporation, (Defendants) Appellants.

No. 52596.

Supreme Court of Missouri, En Banc.

Nov. 12, 1968.

Urban Bergbauer, Pros. Atty. of Iron County, Ironton, Howard Elliott, Edward D. Weakley, Boyle, Priest, Elliott & Weakley, St. Louis, for respondents, Iron County and Selwyn Light.

Dick H. Woods, John K. Bestor, George E. Gibson, Stinson, Mag, Thomson, Mc-Evers & Fizzell, Kansas City, for appellants, The Ruberoid Co., a Division of General Aniline & Film Corp., and the City of Annapolis.

Arnold Brannock, Jefferson City, for appellant, State Tax Commission.

Norman H. Anderson, Atty. Gen., Jefferson City, John H. Denman, Asst. Atty. Gen., amicus curiae, for defendants-appellants.

George S. Hecker, Shepley, Kroeger, Fisse & Hecker, St. Louis, amicus curiae, for Remmert-Werner, Inc.

FINCH, Judge.

This is an appeal from a judgment of the Circuit Court of Iron County overruling a decision by the State Tax Commission and restoring an assessment by the County Assessor of a leasehold interest of the Ruberoid Company (Ruberoid) in property owned by the City of Annapolis (City). We have jurisdiction because Iron County, a politi-cal subdivision, is a party and because construction of the revenue laws is involved.

Ruberoid and City entered into a lease dated October 1, 1963, pursuant to the Industrial Development Act, §§ 71.790–71.850,[1] RSMo 1961 Supp., and V.A.M.S.[2] City contracted to issue industrial revenue bonds in the principal amount of $5,000,000. From the proceeds thereof it agreed to purchase 82.75 acres owned by Ruberoid for $25,000 and, with the remainder of the bond proceeds, to pay for construction thereon of a manufacturing and industrial plant (including machinery and equipment suitable for extraction, processing, storage and sale of ores, minerals and related products) for use by Ruberoid as lessee. The land and plant were referred to as the facility.

The basic term of the lease was for twenty years, with options to renew for fifteen successive terms of five years each. The industrial revenue bonds to be issued by City likewise were payable over this twenty-year period, and the rental payments were calculated and pledged to pay the interest and principal payments on the bonds as they came due. These rental payments, commencing September 15, 1965, and ending March 15, 1983, aggregated $7,047,318.90, which exactly equaled the principal and interest on the $5,000,000 bond issue. The lease provided for payment of additional rentals of $1,000 per year, to be increased to $8,000 per year if City should issue general obligation bonds to construct or acquire a municipal waterworks system. The increased amount was not to extend beyond December 31, 1982, and was subject to reduction of not to exceed $1,000 per year if state, county, school or city ad valorem taxes were assessed against the facility. The renewal options all called for annual rentals of $1,000. In addition, Ruberoid was to pay for all insurance, repairs, maintenance and utilities. Ruberoid also agreed to pay all taxes and assess-

1. Now renumbered §§ 100.010–100.190, RSMo 1967 Cum.Supp.

2. All statutory citations are to RSMo 1959 and V.A.M.S., unless otherwise indicated.

ments, general and special, if any, assessed against the facility or tenant's interest therein under the lease. The City agreed to cooperate with Ruberoid to contest any such assessments and Ruberoid was given the right in its name or City's name, or both, to contest any such assessments.

The lease provided further that if the City became empowered under the laws of Missouri to sell or otherwise dispose of the facility, Ruberoid would have, after August 1, 1973, an option to purchase. The option price was fixed at the full amount then required to redeem all outstanding revenue bonds (taking into account any sums on hand at the time in the principal and interest account for that purpose) plus $1.00. If all bonds had been retired when the option was exercised, the option price was to be $1.00.

The assessment here in question was made as of January 1, 1965. At that time the facility had not been completed and was not in operation. It became operational in August, 1965.

The Assessor was not furnished any valuation data by Ruberoid. He obtained from the City the details of expenditures of bond money for the facility. These totaled $4,204,300 up to January 1, 1965. From that sum he eliminated 3% to 4% as a proper amount representing expenditures for items such as jurisdictional disputes and changes in plans which would not contribute to true value. Then, in order to arrive at the value of the leasehold or possessory interest, he undertook to determine the value of the fee owned by the City subject to such possessory right. In view of the terms of the option to purchase, he considered that the fee inter-

est of the City had little value but he nevertheless assigned thereto a value of 10% of the overall true value established for the facility. The deduction for these items approximated $586,000, leaving a true value of Ruberoid's leasehold interest as of January 1, 1965, of $3,618,000. He then took 30% of that sum to arrive at an assessed value of $1,085,400. This assessment was upheld by the Iron County Board of Equalization.

Ruberoid appealed to the State Tax Commission, which, after a hearing, ruled that Ruberoid's leasehold interest in the property was taxable but that this interest had a negative value as of January 1, 1965.

On appeal by Iron County and its Assessor, the Circuit Court held that the leasehold interest was taxable, that there was no competent and substantial evidence to support the finding of a negative value by the Tax Commission, and that the decision of the Tax Commission should be reversed and the assessment by the County Assessor reinstated. Appeal to this court followed.

Ruberoid asserts that the 82.75 acre tract, being owned by a municipal corporation, is exempt from taxation under Article X, § 6 of the Constitution of Missouri, 1945, and § 137.100(2) of the statutes. It further contends that this exemption also applies to the interest which Ruberoid has in the tract by reason of its lease.[3] The applicable portion of Article X, § 6 of the Constitution is as follows:

"All property, real and personal, of the state, counties and other political subdivisions * * * shall be exempt from taxation; * * *."

---

3. This contention is not joined in by the State Tax Commission. As a matter of fact, the Tax Commission in its order recited that the leasehold interest is subject to taxation. The Attorney General, as amicus curiae, has filed a brief asserting that the leasehold interest of Ruberoid is subject to taxation. That office previously had issued an opinion that such leaseholds are taxable and the County Assessor had relied thereon and cited the opinion to Ruberoid as the basis of his action.

Section 137.100(2) of the statutes provides as follows:

"The following subjects shall be exempt from taxation for state, county or local purposes:

\*   \*   \*   \*   \*   \*

"(2) Lands and other property belonging to any city, county or other political subdivision in this state, including market houses, town halls and other public structures, with their furniture and equipments and on public squares and lots kept open for health, use or ornament; \* \* \*."

It is clear that the interest of the City in the 82.75 acre tract is exempted from taxation by the above constitutional and statutory provisions. The question we must determine is whether these provisions also exempt the leasehold interest of Ruberoid therein from taxation.

The general rule with reference to exemption of privately owned leaseholds in publicly owned real estate is stated in 51 Am.Jur., Taxation, § 535, p. 536, as follows: "Although there is authority otherwise, the general rule is that the exemption from taxation enjoyed by governmental bodies with respect to lands owned by them does not extend to the leasehold interest of a tenant of those lands."

Likewise, in an Annotation "Leasehold estate in exempt property as subject of tax or special assessment," appearing in 23 A.L.R. 248, it is stated: "It is generally held that the exemption from taxation enjoyed by governmental bodies with respect to lands owned by them does not extend to the leasehold interest of a tenant of those lands."

This question is reviewed in an article entitled "Property Taxation of Leases and Other Limited Interests" in 47 California Law Review 470. In that article, l. c. 474, it is stated: "Nevertheless, it is firmly established, and has been for a great many years, that privately held possessory interests, such as those created by lease, in so-called publicly owned property are subject to tax notwithstanding the exemption of publicly owned property."

■ At the outset, we recognize that in Missouri "all property, except such as is specifically exempted by the Constitution and the statutes enacted pursuant thereto, is subject to taxation. State ex rel. Ziegenhein v. Mission Free School, 162 Mo. 332, 337, 62 S.W. 998, 999." State ex rel. and to Use of Benson v. Union Electric Company of Missouri, 359 Mo. 35, 220 S.W.2d 1, 3. Furthermore, a tax-exempting statute is construed strictly against one who claims to be exempt. Tiger v. State Tax Commission, Mo., 277 S.W.2d 561; American Bridge Co. v. Smith, 352 Mo. 616, 179 S.W.2d 12, 157 A.L.R. 798.

In determining whether leaseholds are taxable in Missouri, we first must determine the nature of such a leasehold interest. Chapter 137 of the Missouri statutes covers the assessment and levy of taxes and provides for assessments of real property. Section 137.010(2) defines "real property" for purposes of taxation, as follows:

"(2) 'Real property' includes land itself, whether laid out in town lots or otherwise, and all growing crops, buildings, structures, improvements and fixtures of whatever kind thereon, and all rights and privileges belonging or appertaining thereto; \* \* \*."

If the words "all rights and privileges belonging or appertaining thereto" are construed to include interests such as leaseholds, then leaseholds, by statutory definition, are real property for purposes of taxation and are not personal property. That this court has so construed § 137.010(2) necessarily follows from the decision of this court in State ex rel. Benson v. Personnel Housing, Inc., Mo., 300 S.W.2d 506. In that case, Personnel Housing leased land, the fee title to which was vested in the Federal Government, for the purpose of constructing and renting housing for military personnel. Personnel

Housing constructed housing thereon and the lease provided, at the outset, that title to these improvements was retained by Personnel Housing. Subsequently, however, the lease was amended and title to these improvements was transferred to the Federal Government. The years in which it was sought to tax the leasehold interest of Personnel Housing included a year when the lease provided that title to the improvements was vested in the United States. In each of these years the interest of Personnel Housing in the property was assessed as real estate. The corporation contested the assessment on the basis that the property, including its interest therein, was exempt by reason of the fact that title was vested in the Federal Government. The corporation also contended that there was no statutory authority in Missouri for assessing and taxing leasehold interests. This court, with respect to all of the years involved, states as follows, l. c. 509: "We hold that under the constitutional and statutory provisions, supra, the interest of the defendant in the property is subject to taxation." Subsequently, in the opinion, l. c. 510, the court concluded: "We hold that defendant's interest in the property in question is in fact valuable property and that it not only may be but should be taxed. *We also hold that the assessment of the defendant's interest as real estate was a legal assessment. It was so classified by § 137.010(2), supra."* (Emphasis supplied.) This decision is authority both for the proposition that a leasehold interest is real property for purposes of taxation and that the exemption accorded the Government from taxation thereon does not extend to a privately owned leasehold in that real estate.

Reference is made in the briefs to two earlier Missouri cases. The first is State ex rel. Ziegenhein v. Mission Free School, 162 Mo. 332, 62 S.W. 998. One Thompson leased a tract belonging to defendant, a charitable corporation, and erected a building thereon which, under the lease, remained his property. The leasehold and building were not assessed to Thompson,

but instead the suit sought to enforce a tax lien against the land of the exempt charitable corporation. The court held that the assessment against the Mission Free School could not stand but that the interest of Thompson, consisting of the leasehold and building, was taxable but had not been assessed. The court, in what was dicta, said, l. c. 999: "In most states the interest of Thompson under a lease like this is real estate, and as our statute provides that the words 'real estate' shall be construed to include all interest and estate in lands, tenements, and hereditaments (sections 4907, 4916, Rev.St.1889), little doubt can exist that Thompson's interest in this realty and building should be assessed as real estate."

In State ex rel. and to Use of Potter v. Springfield Convention Hall Ass'n, 301 Mo. 663, 257 S.W. 113, the state sought to collect taxes on a building erected by defendant on land belonging to the city. The court stated that the building did not belong to defendant and the state had not attempted to assess the leasehold interest of defendant. The court then said, l. c. 115: "It will be time enough for us to pass upon the question as to whether or not the leasehold estate is taxable, under the law, when a case of that kind reaches us."

Neither of these earlier cases are inconsistent with Personnel Housing or detract from its holding. The dicta in Ziegenhein is in harmony with the Personnel Housing decision.

In the more recent case of St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644, this question as to the taxability of leasehold interests in publicly owned property again was raised. The State Tax Commission held that short-term leases held by airlines in the terminal at Lambert Airport were taxable but that the leaseholds had no value and hence there should be no tax. This court found there was evidence to support the finding of zero value and affirmed the judgment, stating that it did not reach or decide the question as to whether such leasehold interests are subject to taxa-

tion. The court simply did not consider the question in that case. Consequently, the opinion did not disturb in any way the prior decision of this court in Personnel Housing.

Decisions from other jurisdictions accord with the decision in Personnel Housing. In Moeller v. Gormley, 44 Wash. 465, 87 P. 507, the Supreme Court of Washington upheld the taxation of individually owned leasehold interests in tide lands belonging to the City of Seattle. The Constitution of the State of Washington had a provision exempting property of the United States, the state, counties and municipalities from taxation. Its statute defining real property for purposes of taxation was almost identical to § 137.010(2) and concluded with the language, "and all rights and privileges thereto belonging, or in anywise appertaining." The court held, 1. c. 508: "It would seem that the expression in the statute 'all rights and privileges thereto belonging' would clearly cover a leasehold interest such as we have here." In deciding that the leasehold interest in the tide lands was taxable, the court said, 1. c. 508: "When a lease is given by the state to an individual or private corporation, the lessee thereby obtains for his or its private use certain rights and privileges in, to and upon such real estate. These rights and privileges constitute private property over which the lessee has, and may exercise, absolute dominion and ownership within the limitations of his or its lease. Why as such property it should not be subject to the general rule of taxation we conceive of no reason."

Another case involving taxability of leaseholds in city owned tide lands in the State of Washington was Trimble v. City of Seattle, 231 U.S. 683, 34 S.Ct. 218, 58 L.Ed. 435. On certiorari, the Supreme Court of the United States upheld the assessment. In the court's opinion, 231 U.S. 1. c. 689, 34 S.Ct. 1. c. 219, Mr. Justice Holmes stated: "If these leaseholds are not taxable, they are a favored class of property; for ordinarily leaseholds are taxed even

if they are lumped and included in the value of the fee. When an interest in land, whether freehold or for years, is severed from the public domain and put into private hands, the natural implication is that it goes there with the ordinary incidents of private property, and therefore is subject to being taxed. See People of State of New York ex rel. Metropolitan Street Ry. Co. v. New York State Board of Tax Commissioners, 199 U.S. 1, 38, 25 S.Ct. 705, 50 L.Ed. 65."

Another state with a statute defining real property for purposes of taxation in almost the same terms as § 137.010(2) is North Dakota. In Otter Tail Power Co. v. Degnan, 64 N.D. 413, 252 N.W. 619, the city owned certain lots and a building thereon. It granted to the power company the right to occupy and use the premises for a term of years. The interest of the power company in said tract was assessed as real estate, and after paying under protest, the utility sought to recover the tax. It relied on a constitutional provision exempting the property of various governmental agencies, including municipalities, from taxation. The court held that the property was not taxable to the city by reason of the constitutional provision, but that the rights of the utility therein constituted rights and privileges included in the definition of real property for purposes of taxation. In the course of its opinion, 1. c. 622, the court stated: "The state does not tax the fee nor the owner of the fee. In the language of the Supreme Court of the United States in Jetton et al. v. University of the South, 208 U.S. 489, 28 S.Ct. 375, 378, 52 L.Ed. 584, 588, 'It taxes what it had a right to tax,—a separate and distinct interest in the land.' Because there is an exemption from taxation granted to the owner of the fee, this 'does not extend to an exemption from taxation of an interest in the same land, granted by the owner of the fee to another person as a lessee for a term of years. The two interests are totally distinct, and the exemption of one from taxation plainly does not thereby exempt the other.' Jetton v. University, supra. The exemption from

taxation is to fulfill a governmental purpose in the city, but where there is a right in that property held by a private individual this right is taxable when exercised for private advantage."

Numerous other jurisdictions have reached a like result. We do not lengthen this opinion by reviewing them herein. Those interested may find some of them cited in 23 A.L.R. 248, and 47 California Law Review 470. There are cases to the contrary and these have been cited by Ruberoid. Examples are State v. West Point Development Corporation, 280 Ala. 100, 190 So.2d 535, and Aberg v. Moe, 198 Wis. 349, 224 N.W. 132, 226 N.W. 301. We have considered these cases. In some instances statutory provisions are different. In any event, we have concluded that the majority rule, previously followed in Personnel Housing, is the correct rule and, under our constitutional and statutory provisions, is the one we should follow.

■ Ruberoid refers to various other statutory definitions of real property or real estate appearing in various chapters of the Missouri statutes as indicating that leasehold interests have not been made subject to real property tax in Missouri. Without referring to them specifically, it is sufficient to observe that these sections appear in other chapters relating to different subjects and are not definitions adopted by the general assembly to specify what shall constitute real property for purposes of taxation. That has been done by § 137.010(2) and it is the definition which governs. The same can be said with respect to cases cited by Ruberoid which consider these other statutes and discuss the nature of leaseholds at common law. They do not relate to what constitutes real property for purposes of taxation. We hold that the leasehold interest of Ruberoid in the 82.75 acre tract does fall within the definition of real property for purposes of taxation as set out in § 137.010(2), and is taxable as real property.

A further contention is made that leaseholds are intangible personal property un-der the provisions of Article X, §§ 4(a) and 4(b), Constitution of Missouri, 1945, and as such are not subject to taxation as real property. Article X, § 4(a) of the 1945 Constitution classifies all property for tax purposes into three categories: (1) Real property, (2) tangible personal property, and (3) intangible personal property. Section 4(b) provides that property in class 3 may be taxed only on annual yield and that the tax shall not exceed eight per cent thereof. Obviously, under such provision, intangible personal property producing no income is exempted from taxation. The Committee Reports and Debates quoted in briefs filed herein show this intent. For example, the majority committee report said: "This, of course, will have the effect of exempting from taxation any intangibles that produce no income, such as demand deposits." However, we find no reference in any of those reports or debates to leasehold interests, nor do we find anything to indicate that the committee considered that the classification "intangible personal property" was to include leasehold interests. Consequently, we necessarily return to the question of whether the Legislature has defined leaseholds as real property for purposes of taxation. We already have held herein that they have by § 137.010(2). The forerunner of that section was enacted in 1872. See Laws of Missouri, 1871-72, p. 80, 1. c. 85, § 8. The definition of real property therein is not verbatim the language contained now in § 137.010(2) but it is substantially the same. Consequently, we hold that the Legislature, long before the adoption of the 1945 Constitution, defined real property as including leasehold interests for purposes of taxation.

■ Ruberoid next contends that the Missouri revenue laws do not prescribe any method for collection of a tax assessed against a leasehold in city property and therefore the general assembly did not intend to tax such leasehold interests. It is the position of respondents and the Attorney General that the leasehold interest could be sold pursuant to Chapter 140 and

particularly § 140.150. It does appear from § 140.390 that the act contemplates that an undivided interest in real estate may be sold for tax purposes. That section refers to instances where an undivided interest in land has been sold for taxes and redemption is sought. This conclusion is supported by the case of Porter v. Robinson, Mo., 29 S.W.2d 133, wherein an undivided one-half interest in property was assessed and subsequently sold for nonpayment of taxes. We further observe that in Baltimore Shipbuilding and Dry Dock Co. v. Baltimore, 195 U.S. 375, 381, 25 S.Ct. 50, 51, 49 L.Ed. 242, the Supreme Court of the United States stated: "It is true that commonly taxes on land create a lien paramount to all interests, and that a tax sale often has been said to extinguish all titles and to start a new one. * * * But it needs no argument to show that a State may do less. It may tax a life estate to one and a remainder to another, and sell only the interest of the party making default." This case does not involve proceedings to collect delinquent taxes and we do not rule questions that might arise therein. We do overrule this contention of Ruberoid as it relates to assessment and taxability of leaseholds.

■ Ruberoid makes the further contention that the assessment violates Article X, § 3, and Article I, §§ 2 and 10 of the Constitution of Missouri, 1945, and the 14th Amendment to the Constitution of the United States on the theory that the taxes levied are not uniform. This contention is based upon the fact that the Assessor testified that he had assessed this leasehold interest of Ruberoid in the property owned by the City of Annapolis (it being the only leasehold in publicly owned property in the county) but had not separately assessed other leaseholds in privately owned property located in the county. This, in our judgment, does not show that the taxes assessed were not uniform or that the constitutional provisions were violated. As

Mr. Justice Holmes pointed out in Trimble v. City of Seattle, supra, leaseholds ordinarily are taxed by being lumped and included in the value of the fee, where the fee itself is taxable.[4] The separate assessment of a leasehold interest in publicly owned property does not disclose a constitutional violation of the uniformity required in the assessment and collection of taxes.

The final question raised is that there was competent and substantial evidence upon the whole record to support the decision of the State Tax Commission and that the trial court erred in ruling to the contrary. The only witness offered on this issue by Ruberoid was an expert witness named William J. Randall. He testified that Ruberoid's leasehold interest had no value as of January 1, 1965, whether he figured only on the basis of the original term of twenty years or whether he took into consideration the various options to renew the lease. He stated that in either event the fair annual rent would be less than the annual rental which the lease required Ruberoid to pay. Consequently, the leasehold would have a negative rather than a bonus value. Randall testified that he knew of no comparable rental properties and therefore could not use a basis of comparable rentals. Instead, he employed what he variously referred to as a value in use or a discounted value of rental savings approach.

The County and its Assessor assert that this testimony of Randall as to value may not be considered because Randall gave no consideration to the option to purchase given under the lease to Ruberoid.

Under that option, the option price was to be $1.00 plus the amount required to retire any bonds outstanding from the original issue of $5,000,000 in revenue bonds. Ruberoid already was obligated to pay rentals which would pay off all of those bonds as they matured. Consequently, that portion of the option price consisted of payment of already existing obligations. It merely accelerated the payment if Ruberoid

4. See also: Washington University Law Quarterly, Winter, 1968, p. 136.

elected to exercise its option prior to retirement of all the bonds at the end of the twenty-year period. The only additional payment required of Ruberoid to exercise the option and acquire title was the payment of $1.00.

This option obviously is a valuable right. The facility had been financed through issuance of tax exempt municipal revenue bonds with whatever favorable interest rate such bonds might produce. The option permits acquisition of the facility by merely retiring the bonds issued to pay the cost plus $1.00. If exercised, the only rentals not used to retire borrowed money to build the plant would be the additional rentals of $1,000 per year ($7,000 to $8,000 per year if the City also acquired a municipal waterworks system). The leasehold with such an option to purchase clearly is more valuable than one without. Absent the right to purchase, rental payments were rent, and nothing else, and at the end of the lease period the rental payments would have purchased merely a right of possession and use. With the option to purchase, lessee had the right to apply almost all of the rental payments to a purchase on the basis of cost to the owner (City).

■ We have concluded that it was not necessary for Randall to consider this option in arriving at his opinion of the value of the leasehold as of January 1, 1965, because the City was not empowered to sell the facility under the provisions of Article VI, § 27 of the Missouri Constitution as it existed on January 1, 1965. It was not until the adoption of a constitutional amendment on August 17, 1965, that § 27 was amended to permit plants constructed under said revenue bond section to be "otherwise disposed of pursuant to law," thereby conferring on the City the power to sell and for the first time making Ruberoid's option effective. Wring v. City of Jefferson, Mo., 413 S.W. 2d 292; § 79.010, RSMo 1959, V.A.M.S.

■ The Circuit Court set aside the decision of the Tax Commission on the basis that there was no competent and substantial evidence upon the whole record to support the Commission's finding that Ruberoid's leasehold interest had no value on January 1, 1965. The Circuit Judge concluded that the transcript of the evidence before the Commission disclosed that the Chairman of the Commission sustained an objection to all the testimony of the expert witness William J. Randall on the issue of value. We do not agree, after reading the transcript, that the Commission intended to sustain objections to all of Randall's testimony, but the record is confusing. On numerous occasions, the Chairman, in ruling on an objection, would state, "Sustain your objection but he may answer for what it is worth." Such rulings could indicate that the evidence to which the objection was applied was excluded insofar as consideration by the Commission was concerned. It may be, as appellants' brief contends, that this was intended as a ruling permitting the evidence to be taken and preserved in the record as excluded evidence pursuant to § 536.-070(7). It would be better to clearly so state. In any event, we find that some testimony by Randall on value was not objected to and so was not excluded, and we further find that this evidence constitutes sufficient competent and substantial evidence to support the decision of the Commission. This is the determination which we are to make, and if the record discloses such evidence, the action of the Tax Commission should be affirmed. Article V, § 22, Constitution of Missouri, 1945; § 536.-140; St. Louis County v. State Tax Commission, Mo., 406 S.W.2d 644.

■ The County and the Assessor urge that there is a presumption that the assessment valuations placed on the property by the Assessor and approved by the Board of Equalization are correct. There is such a presumption, but it has been held to be a rebuttable presumption which may be overcome in the de novo hearing which the statutes provide for before the State Tax Commission. Koplar v. State Tax Commission, Mo., 321 S.W.2d 686, 693.

Accordingly, the decision of the Circuit Court is reversed and the case is remanded with directions that the decision of the State Tax Commission with respect to the assessment of January 1, 1965, be affirmed.

All concur.