STATE *ex rel.* BEELER, ATTY. GEN., v. CITY OF NASHVILLE.

(*Nashville,* December Term, 1941.)

Opinion filed January 17, 1942.

Roy H. Beeler, Attorney-General, William F. Barry and Harry Phillips, Assistant Attorneys-General, and A. G. Ewing and Albert Ewing, III, both of Nashville, for complainant.

W. C. Cherry, of Nashville, for defendant.

Mr. Chief Justice Green delivered the opinion of the Court.

The controversy here presented is over the right of the City of Nashville to assess for municipal taxes certain property located in that city, the income of which is exclusively devoted to the operation of Watkins Institute. The State denies this right asserted on behalf of the city, the State insisting that for purposes of taxation the property involved is to be regarded as State property used for educational purposes and exempt from taxes. The chancellor decided in favor of the State and the city has appealed.

Watkins Institute was brought into being by the generosity of Samuel Watkins, a former resident of Nashville, who died many years ago. By his will he left certain property "to the State of Tennessee, as trustee, for the uses and purposes hereinafter mentioned." The will then outlined a scheme for the creation and operation of an educational institution. It is not necessary to go

into the details of the plan, for it is admitted that the enterprise is an educational institution. Its principal activity is the conduct of a free night school where instruction is given on practical subjects.

A further provision of the will was this:

"The Governor of the State of Tennessee is authorized to appoint, by and with the advice and consent of the Senate, three persons, to be known as 'Commissioners of the Watkins Institute,' who shall hold their office for four years, and until their successors are appointed as aforesaid. The said commissioners are to be charged with the duty of expending the said sum of one hundred thousand dollars, or as much thereof as in their judgment may be necessary in purchasing a lot in the City of Nashville, building a house thereon, etc., as hereinafter required, and under whose superintendence, after the buildings are completed, the affairs of the institute are to be managed. They are to receive no compensation for their services, are required to render biennial account to the Governor of receipts, expenditures, and all other matters connected with the trust, and their management is at all times to be subject to inquiry by the authority of the State, under the protection of which the affairs of the institute are placed."

The will contains other provisions as to the duties, powers and discretion of the commissioners but we do not find these things important in the consideration of the matter submitted.

Some time after the execution of this will a codicil was added thereto by which Mr. Watkins devised other property, the legal title to be in the State of Tennessee, to be used for the same purposes as the property given in the body of the will.

By chapter 49 of the Acts of 1881 the Legislature accepted this trust on behalf of the State of Tennessee. Commissioners for the institution were appointed by the Governor and proceeded to set up the enterprise. The institution has been in successful operation since that time, new commissioners having been appointed by the Governor from time to time, according to the terms heretofore indicated.

In 1905 Mrs. Ann E. Webber of Nashville conveyed certain valuable business property in that City to the State of Tennessee as trustee, "the income, rents and profits after the payment of taxes, repairs, insurance, etc., arising from the property conveyed," to be "applied under the supervision of the Commissioners of the Watkins Institute for the enlargement of the facilities of the night school as at present conducted, and continuing to teach the branches now taught" with certain added branches.

By chapter 369 of the Acts of 1905 the Legislature, on behalf of the State, accepted the trust created by Mrs. Webber.

The city has not attempted to assess for taxation such of the property so given by Mr. Watkins and Mrs. Webber as is actually and exclusively used for carrying out the purposes, that is, the work of this institution. It is only undertaking to assess so much of the property as is held by way of investment, not physically used in the institution's work, but the income of which is devoted exclusively to the school's work.

Section 1085 (1) of the Code exempts from taxation "All property of the United States, all property of the State of Tennessee, or any county or of any incorporated city, town, or taxing district in the state that is used exclusively for public county or municipal purposes."

Section 1085 (2) exempts from taxation "All property belonging to any religious, charitable, scientific, or educational institutions, when used exclusively for the purpose for which said institution was created, or is unimproved and yields no income."

██ Chapter 47 of the Acts of 1935 amended section 1085 (2). It did not undertake to amend section 1085 (1). The Act of 1935 is somewhat lengthy and need not be here set out in detail. For the purposes of this opinion it is enough to say that, under the Act of 1935, only such property of religious, charitable, scientific or educational institutions as is exclusively used for carrying out one or more of the purposes of that institution is exempt from taxation. In short, the property physically used in the work of the institution is exempt. The property in which the funds of the institution are invested is not exempt, although the income be used exclusively for carrying on the institution. Investment property of State, however, used exclusively for public purposes is exempt and such property is used exclusively for public purposes when the income therefrom is exclusively so applied. *Vanderbilt University* v. *Cheney,* 116 Tenn., 259, 262, 94 S. W., 90; *Methodist Church* v. *Hinton,* 92 Tenn., 188, 21 S. W., 321, 19 L. R. A., 289. The rule first announced in the Hinton case was not changed by the Act of 1935 in so far as property of the State is concerned, the income of such property being exclusively applied to a public purpose.

It is argued for the city that the Watkins Institute property is not State property. That the State is a mere trustee and that the property should be assessed like the property of any other educational institution operated by a private corporation or individuals. That so much of the property as is physically used in the educational work

is exempt but that the property held by way of invest-
ment is to be taxed, regardless of the application of the
income.

Had this institution been founded by the State and had
the property given by Mr. Watkins and Mrs. Webber
been appropriated to the foundation by an Act of the
Legislature, to be administered by commissioners ap-
pointed and supervised in the manner outlined by Mr.
Watkins, we can safely say that all its holdings would
have been tax exempt.

The scheme for the conduct of the institution is one
frequently adopted by the State for the control of under-
takings of its own creation. That is, government by
trustees appointed by the State, accountable to the State,
and whose "management is at all times to be subject to
inquiry by the authority of the State,"—the affairs of the
institution being placed under the protection of the State.

The source of property employed by the State
for a public purpose does not affect the nature of such
property. The public is the beneficiary whether the prop-
erty is acquired by legislative appropriation or by gift
of third parties. *Trustees of Carrick Academy* v. *Clark*,
112 Tenn., 483, 488, 80 S. W., 64.

It is of course conceded that education is a public
purpose. An educational enterprise is still a public enter-
prise although it serves only a limited territory. The
State might have created this institution and have levied
a local tax for its support as it has created school dis-
tricts in various counties. *Quinn* v. *Hester*, 135 Tenn.,
373, 186 S. W., 459.

We make the foregoing observation to meet the
suggestion of counsel that the conduct of Watkins In-
stitute is not for a public purpose since there is a state-
ment in the will of Mr. Watkins that it is for the benefit

of the youth of Nashville.  However, we are unwilling to give any narrow construction to this phrase "youth of Nashville."  Mr. Watkins did not prescribe that beneficiaries of this institution should be residents or citizens of Nashville.  It was not to be a correspondence school and we think the testator intended its benefits to be open to the youth in Nashville whether they lived here permanently or not.

It follows from what we have said that the Watkins Institute properties would have been free from all taxation if that institution had been set up by an Act of the Legislature to be operated according to the plan outlined by Mr. Watkins, by trustees selected and supervised as indicated in that plan.  This would be true as to the property held by way of investment as well as to the property used exclusively for carrying out the purposes of the institution.

It could make no difference that, instead of originating the educational scheme, the State accepted or adopted the scheme originated by Mr. Watkins.

We have seen that the nature of a public educational enterprise is not altered by the circumstance that it owes its existence to donations from sources other than the public it serves.  *Trustees of Carrick Academy* v. *Clark, supra.*  That school owed its existence to the federal land grants.  It seems utterly unimportant that the donation of Mr. Watkins was made "to the State of Tennessee as trustee," rather than to "the State of Tennessee," for the purposes detailed in his will.  Designated in either way, by accepting this donation the State assumed an obligation to deal with the gift as provided by the testator.  Later the State assumed the same obligation with respect to Mrs. Webber's gift.  The State

became a trustee, at least to the extent that its faith was pledged to the prescribed application of the two gifts.

To be sure there is a difference in the State's right to deal with an institution created as was Watkins Institute and an institution created by the State's own funds. The State might abolish an institution of the latter character and use and apply its property to another purpose. This the State could not do with respect to the property of Watkins Institute. Its faith being pledged, it is unthinkable that the State would be guilty of a breach of faith in this particular.

Granting that the State holds title to the Watkins Institute property merely as a trustee, this it does not seem to us takes the property out of the class of State property exempted from all taxes by Code section 1085 (1). The exemption is determined not by the nature of the State's title to the property but by the use of the property. If it is "used exclusively for public county or municipal purposes," the property is exempt. The property here involved is so used as we have shown.

The contention of the city that Watkins Institute property is not to be treated as State property can not be accepted for purposes of taxation. The legal title to the property is certainly in the name of the State and the property is used for a public purpose by the State.

We have considered the authorities cited on behalf of the city but do not find them controlling. Our statutes differ from statutes considered in some of those cases and our statutes and our constitution have been construed differently from constructions given to the statutes and constitutions of other States.

We find no difficulty with *General Board of State Hospitals* v. *Robertson,* 115 Va., 527, 79 S. E. 1064, so strongly

relied on by the city here. That was an attempt to divert a trust fund which was restrained by the court. It was not a question of exempting the trust fund from taxation during its use for a public purpose stipulated.

For the reasons stated, the decree of the chancellor is affirmed.